IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KAREN JO BARROW,                        §
                                        §
                Plaintiff,              §
                                        §   Civil Action No. 3:00-CV-0913-D
VS.                                     §
                                        §
GREENVILLE INDEPENDENT SCHOOL           §
DISTRICT, et al.,                       §
                                        §
                Defendants.             §

MEMORANDUM OPINION
AND ORDER

The parties tried this case to a jury, which returned a verdict in favor of plaintiff Karen Jo

Barrow ("Barrow") and against defendant Dr. Herman Smith ("Dr. Smith") for $15,455.00 in

compensatory damages and $20,000 in punitive damages, finding, *inter alia*, that Barrow had proved

her parental rights claim. The jury found against Barrow as to her claims against defendant

Greenville Independent School District ("GISD").[1] The court entered judgment, and all parties have

filed post-judgment motions,[2] most of which the court decides today and some of which—those that

are affected by whether (or to what extent) Barrow is entitled to recover attorney's fees and

---

[1]The court has addressed the background facts and procedural history of this case in several prior opinions and will not do so in today's decision. It will instead do so as necessary below, in the context of addressing the dispositive issues that the motions present. The court assumes the parties' familiarity with the facts and procedural history.

[2]The following motions are the subject of this memorandum opinion and order: (1) GISD's April 6, 2005 motion for attorney's fees; Dr. Smith's April 8, 2005 motions (2) for new trial, (3) for judgment as a matter of law, (4) to alter or amend judgment, and (5) for attorney's fees; (6) Barrow's April 11, 2005 preliminary motion for attorney's fees and (7) post-trial motion to alter or amend judgment and for judgment as a matter of law; and (8) Barrow's May 5, 2005 request for *Dondi* conference. Also pending for decision is Barrow's April 13, 2005 objections to GISD's bill of costs. The court will defer deciding the objections.

costs—the court defers to consider additional submissions.

I

Both Barrow and Dr. Smith assert in their post-trial motions various arguments that depend explicitly on the jury's finding that Dr. Smith is liable to Barrow on her parental rights claim but not on her religious rights claim.  The court will consider the arguments together.

A

In the court's charge, it instructed the jury that "[p]ublic school employees have rights protected under the Constitution of the United States to choose to educate their children in private school, including a private school that provides a religious education." Ct. Charge at 7.  The court explained that public school employees "have parental rights under the First and Fourteenth Amendments to direct their children's educations, and they have the right under the Free Exercise Clause of the First Amendment to freely exercise their religious faith by choosing to educate their children in a religious educational institution."  *Id*.  It also instructed the jury that Barrow did not "have to prove that any action taken against her was because of her religion."  *Id*.  In asking the jury to determine whether Barrow had proved her "parental and/or religious rights claim" against Dr. Smith, the court directed the jury to make separate findings on Barrow's parental rights claim and religious rights claim.  *Id*. at 11.  The jury found that Barrow had proved her parental rights, but not her religious rights, claim.

Barrow argues in her motion to alter or amend judgment and motion for judgment as a matter of law that she is entitled to judgment on her religious rights claim.  She maintains that the jury found that the exercise of her parental right to choose a private school for her children was a motivating factor in Dr. Smith's decision not to interview or promote her, and that having reached

- 2 -

this conclusion, the only way the jury could have come to a different result on her religious rights claim would be if it concluded that her decision was not made based on her religious faith. Barrow posits that the evidence was undisputed that her decision to choose the Greenville Christian School for her children was an exercise of her religious faith. She urges that the judgment be modified to reflect that Dr. Smith violated both her parental and religious rights, arguing that her exercise of this legal right was one and the same.

Dr. Smith maintains in his motion to alter or amend judgment that, because the jury denied what he calls Barrow's "Free Exercise claim," his conduct is subject to rational basis scrutiny, which obligated Barrow to prove that the restriction at issue here—conditioning her employment on the enrollment of her children in public school—was not reasonable. He argues that, under rational basis review, his conduct was permissible, and that he is therefore entitled to judgment as a matter of law on Barrow's parental rights claim.

B

Dr. Smith's position is premised on two separate arguments. First, he posits that the Fifth Circuit's decision in *Barrow v. Greenville Independent School District*, 332 F.3d 844 (5th Cir.) ("*Barrow*"), *cert. denied*, 540 U.S. 1005 (2003), can be read to call for a heightened level of scrutiny concerning Barrow's claim. He argues, however, that if *Barrow* subjects claims that involve solely parental rights to a heightened level of scrutiny, it would conflict with *Littlefield v. Forney Independent School District*, 268 F.3d 275 (5th Cir. 2001). In *Littlefield* the panel applied a rational basis test in upholding a school district's mandatory dress code against claims by parents that the code violated "their 'fundamental right' to control the upbringing and education of their children." *Id.* at 282, 288, 291. Dr. Smith posits there is no conflict between *Barrow* and *Littlefield* because,

- 3 -

in *Barrow*, the court noted that a violation of the Free Exercise Clause was also alleged.  Citing the

Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v.*

*Smith*, 494 U.S. 872 (1990), Dr. Smith argues that, if a claim involves both a violation of a parent's

right to direct the education of her children and the parent's free exercise rights, it could be referred

to as a "hybrid rights" claim and might be entitled to a heightened level of scrutiny.  *See id.* at 881

(noting that "[t]he only decisions in which [the Court has] held that the First Amendment bars

application of a neutral, generally applicable law to religiously motivated action have involved not

the Free Exercise Clause alone, but the Free Exercise Clause in conjunction with other constitutional

protections, such as freedom of speech and of the press[.]").  Dr. Smith argues that because the jury

rejected Barrow's "Free Exercise claim," she does not have a "hybrid rights" claim and therefore

is not entitled to the heightened level of scrutiny the Fifth Circuit arguably applied in *Barrow*.

Alternatively, Dr. Smith maintains that rational basis scrutiny is appropriate even if Barrow's

claims can be categorized as "hybrid rights" claims.  He argues that *Barrow* is not binding as to the

appropriate level of scrutiny because the panel specifically limited its holding to whether there is

a "recognized constitutional right," *Barrow*, 332 F.3d at 847, and it specifically noted that it was not

addressing the question of the appropriate level of scrutiny.  Dr. Smith also points to Judge

Maloney's decision in *Littlefield v. Forney Independent School District*, 108 F.Supp.2d 681 (N.D.

Tex. 2000), *aff'd*, 268 F.3d 275 (5th Cir. 2001), in which he declined to apply heightened scrutiny

in a case that presented a "hybrid rights" situation, where the plaintiffs asserted not only a violation

of their parental rights but also their rights under the Free Exercise Clause.  *See Littlefield*, 108

F.Supp.2d at 689, 706-07.  In doing so, the court contrasted the claims at issue in the case before it

from those in *Wisconsin v. Yoder*, 406 U.S. 205 (1972), recognizing that in *Yoder* the Court

"observed that there was 'strong evidence' in the record of a 'sustained faith pervading and regulating respondents' entire mode of life,'" and that "[i]n the *Yoder* Court's mind, the Amish parents had made a 'convincing showing, one that probably few other religious groups or sects could make[.]'"  *Id.* at 706-07 (quoting *Yoder*, 406 U.S. at 219, 235-36).  Dr. Smith argues that Barrow did not have a high level of evidentiary support and that she in fact lost on her "Free Exercise claim."

A brief overview of the procedural history of the instant case helps explain why the court declines to accept Barrow's and Dr. Smith's arguments.  As the Fifth Circuit recognized in *Barrow*,

> [i]n her [first amended complaint], Barrow argued that Smith violated her right to select a private-school education for her children as guaranteed by the First Amendment and "the penumbra of familial privacy rights" (count I); her right under the Due Process Clause of the Fourteenth Amendment to direct the upbringing of her children (count II); and her right under the Free Exercise Clause of the First Amendment to provide a religious education for her children (count III).

*Barrow*, 332 F.3d at 846-47 (emphasis omitted).  In his motion for summary judgment based on qualified immunity, Dr. Smith argued that Barrow could not establish that she was discriminated against on the basis of her religious beliefs.  In her response, Barrow maintained that her rights to the free exercise of her religion were clearly established in July 1998.  As part of her argument, Barrow quoted the Supreme Court's decision in *Employment Division* in advancing the contention that "when the 'Free Exercise Clause [is viewed] in conjunction with other constitutional protections,' then, in those situations 'the First Amendment bars application of a neutral, generally applicable law to religiously motivated action.'"  P. Resp. Br. at 30-31 (quoting *Employment Div.*, 494 U.S. at 881).  She asserted that, "[i]n these types of 'hybrid' cases, the Supreme Court in [*Employment Division*] reaffirmed the applicability of the First Amendment's bar to a neutral law

of general applicability which had the effect of burdening religiously motivated actions." *Id.* at 31. Apparently advocating the application of strict scrutiny to Dr. Smith's conduct, Barrow argued that he did not advance a compelling state interest in his brief, and she contended that his failure to do so "doom[ed]" his argument that there was no "religious discrimination." *Id.*

In deciding Dr. Smith's motion for summary judgment, the court considered Barrow's free exercise claim separately from her parental rights claim. It concluded that "Dr. Smith's school attendance requirement constituted a neutral, generally applicable regulation that was not enacted to inhibit a particular faith or religion in general[,]" and that, as a result, "it 'will withstand a free exercise challenge when the regulation is reasonably related to a legitimate state interest.'" *Barrow v. Greenville Indep. Sch. Dist.*, 2002 WL 255484, at *4 (N.D. Tex. Feb. 20, 2002) (Fitzwater, J.) ("*Barrow I*"), *rev'd*, 332 F.3d 844 (5th Cir.), *cert. denied*, 540 U.S. 1005 (2003).

Although this court dealt with Barrow's free exercise claim separately, the Fifth Circuit in *Barrow* did not. As mentioned above, the panel noted Barrow's separate counts in her amended complaint, but it considered the three claims in tandem, observing that "at bottom all aver that Barrow, a public-school employee, has a constitutionally-protected right to select a private-school education for her children." *Barrow*, 332 F.3d at 847. The panel explained that its "inquiry at this stage is limited to the question whether there is a recognized constitutional right and not whether that right is grounded in the First Amendment, the Fourteenth Amendment, or both." *Id.* Relying on its decisions in *Brantley v. Surles*, 718 F.2d 1354 (5th Cir. 1983), and *Fyfe v. Curlee*, 902 F.2d 401 (5th Cir. 1990), the panel held that "the constitutional right of public-school employees to select a private-school education for their children was clearly established when Smith refused to consider Barrow for the position of assistant principal." *Id.* at 848.

It is evident from Dr. Smith's arguments in his motion to alter or amend judgment that he is mistaken concerning the nature of Barrow's religious rights claim that the court submitted to the jury.  He sees it as a form of stand-alone free exercise claim.  Instead, the court viewed the First Amendment Free Exercise Clause as but one of two constitutional predicates (the other being the parental rights guaranteed by the First and Fourteenth Amendments) for the right articulated in *Barrow* of a public school employee to select a private school education for her children.  Although the court separated these predicates in the jury charge and gave them the labels "Parental Rights Claim" and "Religious Rights Claim," it followed this approach to give effect to the principle set out in cases like *P & L Contractors, Inc. v. American Norit Co.*, 5 F.3d 133 (5th Cir. 1993).  *See id.* at 138 ("Where the law recognizes alternative or overlapping theories of recovery, the court must properly condition the interrogatories to minimize the possibility of conflicting or overlapping verdicts.") (citing John R. Brown, *Federal Special Verdicts: The Doubt Eliminator*, 44 F.R.D. 338, 340 (1969)).  Under the Fifth Circuit's decision in *Barrow*, a finding in Barrow's favor on either predicate is sufficient to establish that Dr. Smith violated the right that the panel identified was clearly established at the time of Dr. Smith's decision: her right, as a public school employee, to select a private school education for her children.  Had the court intended to submit an independent free exercise claim, it would have instructed the jury on the law that pertained to such a claim, including the appropriate level of scrutiny to apply to Dr. Smith's conduct.  This would have required the court to determine, as did the *Littlefield* court, whether to apply a "hybrid rights" theory to her free exercise claim, resulting either in the application of strict scrutiny or rational basis review.  Such a determination was unnecessary, however, because the court did not submit an independent free exercise claim to the jury.  The court decided that, because the Fifth Circuit's

*Barrow* opinion made clear that Dr. Smith was not entitled to qualified immunity concerning Barrow's parental rights claim as a public school employee (with its two constitutional origins), it would submit that claim to the jury.  If Barrow could prove the claim, it would provide her the relief she sought under 42 U.S.C. § 1983, without requiring that the trial exceed the scope of the qualified immunity issue that the Fifth Circuit had already resolved.  From the standpoint of judicial efficiency, it was unnecessary to complicate the trial with other claims and defenses that, even if resolved in Barrow's favor, would not afford her any greater relief than her parental rights action would provide.

C

In view of the foregoing, the court also denies Barrow's motion that it modify the judgment to reflect a finding of liability on Barrow's religious rights claim.  First, the judgment itself need not be altered or amended because it says nothing about the basis for entering judgment, and no changes need be made to the relief granted by the judgment.  Second, the court need not do so because the jury ruled in Barrow's favor concerning the right that was at issue after the Fifth Circuit's qualified immunity decision—her right, as a public school employee, to choose a private school education for her children.  Her "religious rights," as protected by the First Amendment Free Exercise Clause, served as one predicate for that right.[3]

Dr. Smith attempts in his motion to alter or amend judgment to shift the burden to Barrow of showing that the patronage policy was unreasonable.  This effort is precluded, however, by the

---

[3]Because the court declines to alter or amend the judgment to reflect a finding for Barrow on her religious rights claim, the court need not address Dr. Smith's and GISD's arguments in their responses to her motion to alter or amend judgment and judgment as a matter of law that Barrow is not entitled to judgment on her religious rights claim pursuant to Fed. R. Civ. P. 59(e) because it is not a proper avenue for determining evidentiary sufficiency.

- 8 -

Fifth Circuit's decision in *Barrow*, which is the law of the case.  Although the panel stated that it was expressing "no opinion on the particular degree of scrutiny a state action must undergo to withstand a challenge to its constitutionality in a case like this one," it explicitly recognized "that the state cannot strip its school employees of the right to choose a private-school education for their children without proving that the unfettered exercise of this right will undermine a state interest." *Barrow*, 332 F.3d at 849 n.20.  *Barrow* placed the burden squarely on Dr. Smith to show that his actions were not unreasonable.  Recognizing that its decisions in *Brantley* and *Fyfe* "leave no doubt that public-school employees like Barrow have a protected right to educate their children in private school," the panel explained that "[t]he state cannot take an adverse employment action against a public-school employee for exercising this right unless it can prove that the employee's selection of private school materially and substantially affects the state's educational mission." *Id*. at 848.[4] The requirement that the state make such a showing does not appear to be dependent on the existence of a "hybrid right."  The court in *Fyfe* required the government to make such a showing even though no religious rights were at issue.  *See Fyfe*, 902 F.2d at 405 ("Because the school district produced no evidence of substantial interference with its effectiveness as a result of Mrs. Fyfe's enrollment of her daughter in private school, Mrs. Fyfe must prevail as a matter of law."). Accordingly, the court holds that Dr. Smith had the burden to show that his actions were justified, and that the placement of this burden on him is unaffected by the jury's determination as to Barrow's religious rights claim.

---

[4]In her response to Dr. Smith's motion, Barrow equates the standard that the *Barrow* panel articulated with the application of strict scrutiny.  Like *Barrow*, this court need not specify the level of scrutiny applicable in this case.  It is sufficient to say that *Barrow* held that Dr. Smith had the burden of showing material and substantial impairment.

Accordingly, neither Dr. Smith nor Barrow is entitled to relief on the grounds asserted.

II

The court now addresses the additional arguments that Barrow raises in her motion to alter or amend judgment and motion for judgment as a matter of law.

The court is authorized to alter or amend judgment under Fed. R. Civ. P. 59(e) "to correct a clear error of law or prevent manifest injustice." *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (5th Cir. 2002) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)). "A court may enter judgment as a matter of law under Rule 50 only where there exists 'no legally sufficient evidentiary basis for a reasonable jury to find' otherwise." *Gaia Techs., Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 371 (5th Cir. 1999) (quoting Rule 50(a)(1)).[5]

A

Barrow argues that the judgment should be altered to reflect that GISD is liable to her under § 1983. Reasserting an argument that she has advanced unsuccessfully before, Barrow essentially posits that because Dr. Smith was the final decisionmaker concerning whom to interview and recommend for promotion, his decision to deny her an interview should be imputed to GISD. She maintains that the undisputed evidence at trial established that GISD delegated to Dr. Smith final decisionmaking authority to decide whom to interview and recommend for promotion.

As a basis for her argument, Barrow again attempts to rely on *Coggin v. Longview*

---

[5]Although Dr. Smith and GISD argue in their responses to Barrow's motion that she has waived any challenge under Rule 50 because she did not urge her arguments at trial, the court need not address this contention. As the court will explain, the arguments Barrow asserts that are appropriate for a motion for judgment as a matter of law fail for other reasons.

*Independent School District*, 289 F.3d 326 (5th Cir. 2002), *vacated pending en banc review*, 309 F.3d 307 (5th Cir. 2002) (en banc).  She persists in citing and discussing the *Coggin* panel opinion as if it were binding Fifth Circuit authority.  During the trial, although the court had no occasion to announce that it was doing so, it declined to rely on Barrow's arguments to the extent based on the *Coggin* panel opinion.  Because Barrow continues to cite the panel opinion as if it were controlling—in fact, she mistakenly asserts that "[t]he panel decision in *Coggin* was affirmed *en banc* by the Fifth Circuit," P. Mot. at 8—the court now addresses whether the panel opinion is binding on this court.

It is well settled that, when the Fifth Circuit grants rehearing *en banc*, the panel opinion is vacated and has no precedential value.  5th Cir. R. 41.3 provides: "[u]nless otherwise expressly provided, the granting of a rehearing en banc vacates the panel opinion and judgment of the court and stays the mandate."  *See, e.g., Soffar v. Cockrell*, 300 F.3d 588, 590 (5th Cir. 2002) (en banc) ("We granted rehearing en banc, thereby vacating the panel opinion." (citing Rule 41.3)); *United States v. Pineda-Ortuno*, 952 F.2d 98, 102 (5th Cir. 1992) (observing that rehearing en banc had been granted in cited case and that, as a result, "the panel decision is vacated and of no precedential value." (citing Rule 41.3)).  There is nothing in the court's order in *Coggin* granting rehearing *en banc* that indicates that the Fifth Circuit did not intend for the rule to apply.  *See Coggin*, 309 F.3d at 308.

Nor is Barrow correct in asserting that the *en banc* Fifth Circuit "affirmed" the panel opinion.  The *en banc* Fifth Circuit sometimes reinstates a panel opinion, in whole or in part, but when it does, it does so explicitly.  *See, e.g., United States v. Herrera*, 313 F.3d 882, 885 (5th Cir. 2002) (en banc) (per curiam) ("[T]he applicable portions of the panel opinion are reinstated." (citation omitted));

- 11 -

*Soffar*, 300 F.3d at 590 ("We reinstate the rulings of the panel concerning the grant or denial of COA as to all issues raised by Soffar.").  The *en banc Coggin* court neither explicitly reinstated the panel opinion nor "affirmed" the panel.  Nowhere in the *en banc* opinion is there any explicit reinstatement of any part of the panel opinion.  And while the *en banc* court did affirm, it "affirm[ed] *the judgment of the district court*."  *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 460 (5th Cir. 2003) (en banc) (emphasis added); *see also id.* at 466 ("[W]e AFFIRM *the judgment of the district court*." (emphasis added)).  Accordingly, even if the panel opinion in *Coggin* supports Barrow's argument, which the court need not decide, it is not binding on this court.

With the *Coggin* panel opinion placed in its proper non-precedential context, the court now addresses Barrow's argument, concluding that it lacks merit under established Supreme Court precedent and the law of this circuit.  For purposes of attaching § 1983 liability to a governmental entity based on the actions of an employee, there is an important distinction to be drawn between those instances where the employee acts as a policymaker as those where he acts simply as a decisionmaker.  *See, e.g., Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247-48 (5th Cir. 2003) (recognizing that "[m]unicipal liability under 42 U.S.C. § 1983 requires proof of . . . a policymaker," and observing that a "delegation of decision-making authority [under a particular provision of the Texas Education Code] does not negate the fact that . . . final policymaking authority lies exclusively with the Board."); *Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1246 (5th Cir. 1993) (noting that the Supreme Court in *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), "distinguished between those having mere *decisionmaking* authority and those having *policymaking* authority." (emphasis in original)).  In *Pembaur* the Supreme Court recognized

- 12 -

> that not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable. Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and of course, whether an official had final policymaking authority is a question of state law.

*Pembaur*, 475 U.S. at 481-83 (footnotes and citation omitted).

The *Jett* court relied on *Pembaur* in reaching its decision. *See Jett*, 7 F.3d at 1246-47. In *Jett* a high school teacher and coach brought a § 1983 action against the district that employed him when the district Superintendent ordered him transferred to a school where his position would not involve coaching duties. *Id.* at 1242-43. The plaintiff alleged that, before the Superintendent approved the recommendation, he informed him that his Principal's transfer recommendation, on which the transfer was based, was racially motivated. *Id.* at 1243. The court noted that the school district Board of Trustees took no action regarding the transfer. *Id.* The plaintiff in *Jett* argued that the district Trustees "had delegated final policymaking authority as to employee transfers" to the Superintendent and pointed to evidence that supported the conclusion that the Superintendent was the final decisionmaker regarding the transfer. *Id.* at 1246. The court observed, however, that the fact "that [the Superintendent] may have been delegated the final decision in the cases of protested individual employee transfers does not mean that he had or had been delegated the status of policymaker, much less final policymaker, respecting employee transfers." *Id.* The court ultimately held that the evidence was "not sufficient to support a finding that [the Superintendent] possessed

final policymaking authority in the area of employee transfers," and that, under Texas law, such authority was vested in the district's trustees, and there was "no evidence they had delegated it to [the Superintendent]." *Id.* at 1251. An example from *Pembaur* that the *Jett* court quoted also helps to explain why Barrow's argument is insufficient to establish that GISD is liable under § 1983. In *Pembaur* the Supreme Court explained that

> the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy. If this were the case, the Sheriff's decisions respecting employment would not give rise to municipal liability, although similar decisions with respect to law enforcement practices, over which the Sheriff is the official policymaker, would give rise to municipal liability. Instead, if county employment policy was set by the Board of County Commissioners, only that body's decisions would provide a basis for county liability.

*Pembaur*, 475 U.S. at 484 n.12 (emphasis omitted), *quoted in Jett*, 7 F.3d at 1247.

This court held in deciding GISD's motion for summary judgment that "under the revised Texas Education Code, the GISD Board—not the Superintendent—establishes policy concerning the eligibility requirements for a person to be interviewed for an administrator position." *Barrow v. Greenville Indep. Sch. Dist.*, 2002 WL 628665, at *3 (N.D. Tex. Apr. 18, 2002) (Fitzwater, J.) ("*Barrow II*"). Thus as *Jett* and *Pembaur* make clear, even if the undisputed trial evidence established that GISD delegated final *decisionmaking* authority to Dr. Smith regarding whom to interview and recommend for promotion, this is insufficient of itself to attach liability to GISD under § 1983 for Dr. Smith's actions.[6] Accordingly, GISD cannot be held liable based on Dr. Smith's

---

[6]Although Barrow also attempts to rely on the Supreme Court's decision in *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397 (1997), her effort is misplaced. There the respondent contended that the Sheriff took the action that served as the basis for liability for the county. *Id.* at 401. The county stipulated that the Sheriff was the county's policymaker "regarding the Sheriff's Department." *Id.*

exercise of decisionmaking authority.

B

Barrow also contends that the court erred in refusing to grant her costs against Dr. Smith and in taxing GISD's costs against her. She argues that equity requires that she recover her costs because she won her case. Barrow's arguments concerning Dr. Smith will be considered later in this opinion, in conjunction with those in her preliminary motion for attorney's fees. The court thus turns to the question whether GISD was entitled to recover its taxable costs from Barrow and holds that it was.

Citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 430 (5th Cir. 2000), Barrow maintains that it is manifestly unjust to refuse to award costs to a prevailing civil rights plaintiff, and require her to pay them, when defendants are represented by the same insurance company and organized a joint defense, but ultimately lost. *Byers* does not support, or even speak to, her argument.

Barrow also argues that an award of costs to a prevailing defendant is the exception rather than the norm in a civil rights case. The cases she cites do not support her contention. Two of them—*Casa Marie Hogar Geriatrico, Inc. v. Rivera-Santos*, 38 F.3d 615 (1st Cir. 1994), and *Hughes v. Rowe*, 449 U.S. 5 (1980)—pertain to the shifting of attorney's fees, not costs. *See Casa Marie*, 38 F.3d at 618 ("In civil rights cases, *fee-shifting* in favor of a prevailing plaintiff is the rule, whereas *fee-shifting* in favor of a prevailing defendant is the exception." (emphasis added)); *Hughes*, 449 U.S. at 15 ("[A] plaintiff should not be assessed his opponent's *attorney's fees* unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." (emphasis added) (quoting *Christiansburg Garment Co.* v.

- 15 -

*EEOC*, 434 U.S. 412, 422 (1978))).  The other case Barrow cites likewise fails to support her argument.  Although the court in *Association of Mexican American Educators v. California*, 231 F.3d 572 (9th Cir. 2000), did affirm the district court's refusal to award costs to the defendant, the denial of costs appeared to depend heavily on the unique circumstances of the case rather than on a presumption against awarding costs to defendants in civil rights cases.  *See id.* at 593.  In fact, the court explicitly stated that it did not "mean to suggest that the presumption in favor of awarding costs to prevailing parties does not apply to defendants in civil rights actions." *Id.*

The Fifth Circuit has recognized that "[p]ursuant to Fed. R. Civ. P. 54(d), except when provided otherwise by statute or rule, 'costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs.'" *Wilson v. City of Plano*, 160 F.3d 211, 212 (5th Cir. 1998) (per curiam).  It has also stated that "Rule 54(d) creates 'a strong presumption that the prevailing party will be awarded costs[.']" *Id.* (quoting *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985)).  Accordingly, the court holds that GISD—which prevailed against Barrow in this lawsuit—is entitled to recover its taxable court costs.

III

The court now turns to some of Dr. Smith's other arguments in his motions to alter or amend the judgment, for new trial, or for judgment as a matter of law.

A

Dr. Smith advances several arguments in support of his contention that he is entitled to qualified immunity.  He asserts essentially the same arguments in his motion for new trial and posits that he should have been allowed to present evidence at trial in support of his qualified immunity defense.

The court "has discretion to grant a new trial under Rule 59(a) of the Federal Rules of Civil Procedure when it is necessary to do so 'to prevent an injustice.'" *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774 (5th Cir. 1995) (quoting *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993)). New trials can be granted under Rule 59 "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States[.]" Rule 59(a). The rule "confirms the trial court's historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Id.* at 613 (footnotes omitted).

Dr. Smith's contention in his motion to alter or amend judgment that the Fifth Circuit's decision in *Barrow* did not preclude him from asserting qualified immunity cannot withstand scrutiny. Assuming *arguendo* that the *Barrow* panel did not do so in any other context, it certainly settled the issue of Dr. Smith's non-entitlement to qualified immunity concerning the cause of action that the court submitted to the jury: Barrow's claim that Dr. Smith violated her right as a public school employee to educate her children in private school. The court need not therefore individually address the arguments in Dr. Smith's motions, because each is foreclosed under the law of the case.

In *Barrow* the Fifth Circuit reversed this court's decision that Dr. Smith was entitled to summary judgment on the basis of qualified immunity. *See Barrow*, 332 F.3d at 846. The panel held that "public-school employees like Barrow have a protected right to educate their children in private school." *Id.* at 848. It concluded that "[t]he state cannot take an adverse employment action against a public-school employee for exercising this right unless it can prove that the employee's

- 17 -

selection of private school materially and substantially affects the state's educational mission." *Id.* The panel held that "[b]ecause Smith failed to present a fact issue that Barrow's children's attendance of a private school would negatively impair district operations were Barrow selected for assistant principal, *the violation of a constitutional right is shown.*" *Id.* (emphasis added). This use of unequivocal language, considered in conjunction with the conspicuous absence of language similar to that used on other occasions by the Fifth Circuit to indicate that a party was not foreclosed from litigating an issue in future proceedings, foreclosed Dr. Smith from relying on the defense of qualified immunity at trial. *See, e.g.*, *Harper v. Harris County, Tex.*, 21 F.3d 597, 599, 601 (5th Cir. 1994) (affirming trial court's denial of summary judgment based on qualified immunity and noting that "[o]f course, [the defendant] still may assert qualified immunity at trial. We express no view as to the facts that may be established at trial or as to the legal significance of those facts."); *Edwards v. Cass County, Tex.*, 919 F.2d 273, 277 (5th Cir. 1990) ("Out of an abundance of caution, however, we note that the defendants still may assert qualified immunity at trial. We express no view as to whether defendants in fact are entitled to such immunity." (citation omitted)); *McCuen v. Home Ins. Co.*, 633 F.2d 1150, 1152 (5th Cir. Unit B Jan. 1981) (per curiam) ("Because the case was decided on summary judgment on the basis of *Price v. Maryland Casualty Co.*, there was no determination made by the district court as to whether plaintiff was in fact discharged because of his age. . . . We reverse the grant of summary judgment and remand to the district court for further consideration. We express no view as to the proper outcome of this case on remand."). The *Barrow* panel used no similar language. And, as noted, this court on remand submitted the case to the jury only on the basis of the right that the *Barrow* panel addressed. It did not permit Barrow to stray into, or instruct the jury on, claims for which Dr. Smith might arguably be entitled to qualified immunity.

- 18 -

For these reasons, the court denies Dr. Smith's motions to alter or amend the judgment or for a new trial on the basis that he is entitled to qualified immunity or should have been allowed to present evidence in support of this defense.[7]

B

Dr. Smith also argues that Barrow is not entitled to punitive damages or, alternatively, that the punitive damages award should be reduced.  This argument also serves as the basis for his motion for judgment as a matter of law.  He also advances arguments pertaining to punitive damages in his motion for new trial.

1

In his motion to alter or amend judgment, Dr. Smith argues that Barrow is not entitled to punitive damages because she did not properly plead them, and that such an award would violate his right to due process.  He asserts essentially the same argument in his motion for judgment as a matter of law.  It appears clear that, in this context, Dr. Smith is alleging a violation of his right to procedural due process.

In *Barrow v. Greenville Independent School District*, 2005 WL 39086 (N.D. Tex. Jan. 7, 2005) (Fitzwater, J.) ("*Barrow III*"), the court allowed Barrow to file a third amended complaint to seek punitive damages against Dr. Smith and granted him leave to depose her on this claim.  *Id.* at *8. Dr. Smith's challenge is based on two arguments.  First, he posits that Barrow's late amendment

_____

[7]In his motion for judgment as a matter of law, Dr. Smith also argues that the award of punitive damages against him should be stricken or reduced because he was not allowed to present evidence and obtain a jury issue regarding qualified immunity or the extraordinary circumstances exception.  These arguments fail for the reasons already discussed.

denied him the opportunity to prepare sufficiently for, and respond to, her claim for punitive damages. He contends that, until two months before trial, he was not on notice that Barrow would be allowed to claim punitive damages, and that he was not provided an adequate opportunity to conduct discovery and prepare for trial on this issue. Second, he argues that the late amendment was unduly prejudicial because he relied on Barrow's live pleadings in making his Rule 68 offers of judgment. These contentions lack force.

As *Barrow III* makes clear, Dr. Smith had sufficient notice well before the court allowed Barrow to seek punitive damages that he might be required to defend against a claim for such damages. Although the court recognized that Barrow's first amended complaint did not put Dr. Smith on notice that she was seeking punitive damages, it also pointed to the fact that Barrow had served both defendants with an amended response to interrogatories on July 19, 2001, wherein she gave notice that she intended to seek punitive damages. *Id.* at *8. As the court explained, Dr. Smith received this notice approximately 40 days before discovery closed. *Id.* The court also observed that, on September 4, 2001, Barrow sought leave to amend her complaint, and her proposed complaint included a request for punitive damages. *Id.* Although the court denied her motion, it did so without prejudice. *Id.* Dr. Smith might not have known indubitably until *Barrow III* that Barrow would be allowed to seek punitive damages, but the court's reasoning shows that he knew as early as July or September 2001—over three years before the court's decision in *Barrow III*—that a claim for punitive damages might enter the case. He could have conducted discovery that would have related to the propriety and amount of punitive damages after Barrow's July 2001 interrogatory responses reflected her intent to seek them, because discovery had not yet closed. And even if he should not have done so then, in *Barrow III* the court explicitly granted Dr. Smith the opportunity

to depose Barrow on punitive damages.  Although Dr. Smith appears to argue in his motion to alter

or amend judgment that this was insufficient, he does not identify any information that he needed

to prepare for trial that he was unable to acquire from Barrow's deposition or from evidence already

available to him.[8]  Additionally, he does not explain why the opportunity to depose Barrow was

inadequate to prepare him to defend against her claim.  Without this explanation, the court cannot

conclude that Dr. Smith's right to procedural due process was violated.  Finally, Dr. Smith did not

move for a trial continuance in order to address the issue of punitive damages.

Dr. Smith's argument that he was prejudiced by the late addition of a punitive damages claim

because he relied on Barrow's live pleadings in making his offer of judgments also fails to show that

his right to due process was violated.  If this rationale were accepted, the right under Rule 15(a) to

amend one's pleadings could be subject to due process challenges in many cases in which Rule 68

offers of judgment have been made.  This position is not supported by recognized procedural due

process concepts.

Additionally, Dr. Smith himself raised the issue of the propriety of the punitive damages

claim in his second motion for summary judgment, filed November 5, 2004.  In considering the

parties' arguments in relation to Dr. Smith's motion, the court permitted Barrow to file a third

amended complaint to seek punitive damages.  Dr. Smith had an adequate opportunity to present in

his briefing his argument against her punitive damages claim.

Because Dr. Smith was given an adequate opportunity to be heard on this issue, his right to

---

[8]Dr. Smith complains about obstructionist tactics undertaken by Barrow and her attorney
during her deposition and includes excerpts from it.  Even if Barrow and her attorney's conduct at
the deposition was improper—a question the court does not reach—Dr. Smith still fails to explain
specifically why this behavior prevented him from adequately preparing to defend Barrow's
punitive damages claim.

due process was not violated.

2

Dr. Smith also argues that a punitive damages award against him violates his substantive due process rights. He contends that he was not given fair notice that his alleged actions would subject him to punitive damages. He maintains that it violates his rights to subject him to such damages for conduct that numerous school officials, the Texas Association of School Boards ("TASB"), school lawyers, judges, and even this court believed was legal.[9] He also complains that the parental rights claim at issue in this case had only been vaguely defined as to its content, had not been specifically defined as to its textual source in the Constitution, and had not been specifically defined as to the applicable level of scrutiny.

Although Dr. Smith posits a violation of his substantive due process rights, he appears to complain about inadequate notice. Thus his arguments are more accurately construed as pertaining to procedural due process. Like his arguments related to qualified immunity, these contentions are foreclosed by the law of the case. In *Barrow* the panel held that "no reasonable official could

---

[9]Dr. Smith's assertion that this court considered his conduct *to be legal* is inaccurate. The court concluded that Dr. Smith was entitled to qualified immunity because "it was not clearly established in July 1998 that the school patronage requirement at issue violated [the] rights" that Barrow asserted, and because

> [a] reasonable Superintendent could have concluded that it was constitutional in July 1998 to condition a public school administrator's employment on sending her children to public school, once the Superintendent determined that not imposing such a restriction would materially and substantially impede the operation and effectiveness of the educational program.

*Barrow I*, 2002 WL 255484, at *5-*6. Rather than concluding that Dr. Smith's conduct was legal, the court held that Barrow had alleged a violation of her parental and free exercise rights. *See id.* at *3-*4.

- 22 -

conclude that the application of the school district's public-school patronage policy to Barrow was constitutional." *Barrow*, 332 F.3d at 849. Although Dr. Smith seems to argue that the Fifth Circuit's decision does not reflect reality and should not be considered in relation to punitive damages (even if it applies in the context of qualified immunity), the panel's decision is the law of the case, and this court is obligated to follow it. Any evidence that Dr. Smith would have offered at trial to prove that other officials, lawyers, or judges believed that a patronage policy such as the one at issue here was legal would conflict with the Fifth Circuit's unequivocal ruling to the contrary.

Moreover, although Dr. Smith appears to posit that his due process rights were somehow violated by the fact that the parental rights claim had not been defined either in its content or in its textual source, the Fifth Circuit's decision in *Barrow* holds that *Brantley* and *Fyfe* "confirm that the constitutional right of public-school employees to select a private-school education for their children was clearly established when Dr. Smith refused to consider Barrow for the position of assistant principal." *Barrow*, 332 F.3d at 848. Accordingly, contrary to Dr. Smith's contention and to this court's conclusion in *Barrow I*, the contours of the right that Barrow asserts in this case were clearly defined by *Brantley* and *Fyfe*. In reversing *Barrow I*, the Fifth Circuit implicitly recognized that Dr. Smith was on notice that his alleged conduct was unlawful. *See Kinney v. Weaver*, 367 F.3d 337, 367 (5th Cir. 2004) ("Qualified immunity should not be denied unless the law is such that reasonable officials should be 'on notice [that] their conduct is unlawful.'" (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). Dr. Smith's due process rights were not violated on this basis.

Additionally, Dr. Smith's complaint that *Barrow* did not specifically define the appropriate level of scrutiny also fails to show a due process violation. Both *Brantley* and *Fyfe* place the burden on the state "to prove that a state action that interferes with protected educational choices of its

- 23 -

public-school employees furthers the state's interest in the efficient operation of its schools."
*Barrow*, 332 F.3d at 849.  Because the Fifth Circuit concluded that *Brantley* and *Fyfe* confirmed that
the right at issue was clearly established when Dr. Smith acted, it follows that these decisions
sufficiently placed him on notice that it was his burden to adduce evidence that his adherence to a
patronage policy advanced a state interest.

The court is therefore unable to conclude that Dr. Smith's right to due process was violated
based on insufficient notice that his alleged actions would subject him to punitive damages.

3

Dr. Smith argues in his motions to alter or amend judgment and for judgment as a matter of
law that Barrow is not entitled to punitive damages because the evidence does not support such an
award.  Although the way he phrases this argument appears to indicate that he is complaining that
the trial evidence was insufficient to support such an award, he may in fact be asserting that the court
erred by precluding him from introducing certain evidence to defend against punitive damages.  This
follows from the fact that his argument mirrors almost exactly the one in his motion for new trial,
in which he maintains that he should have been permitted to present evidence related to the factors
set out in *Kolstad v. American Dental Ass'n*, 527 U.S. 526 (1999), to counter Barrow's punitive
damages claim.[10]

"[P]unitive damages may be awarded only when the defendant's conduct 'is motivated by
evil intent or demonstrates reckless or callous indifference to a person's constitutional rights.'"
*Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003) (quoting *Sockwell v. Phelps*, 20

---

[10]Dr. Smith's argument that he was not allowed to present relevant evidence regarding
punitive damages also serves as one of the bases for his motion for judgment as a matter of law.

F.3d 187, 192 (5th Cir. 1994)) (internal quotation marks omitted). The "reckless or callous indifference" this standard requires is "'recklessness in its subjective form,' i.e. 'a subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations.'" *Id.* (quoting *Kolstad*, 527 U.S. at 536) (internal quotation marks omitted).

Dr. Smith asserts that his conduct did not include "reckless or callous indifference to the federally protected rights of others," *Smith v. Wade*, 461 U.S. 30, 56 (1983), because (1) he did not know that the alleged actions would violate any of Barrow's federally-protected rights, (2) he believed his actions were legal, and (3) the underlying theory of discrimination is novel or otherwise poorly recognized. He argues that the evidence he proffered demonstrates that it was reasonable for him to be unaware that his alleged actions would violate Barrow's rights. He also contends that he could not have been recklessly or callously indifferent to Barrow's rights if he was not subjectively aware of the federal right at issue, and that this is particularly true when other reasonable public school officials were also subjectively unaware of that right.

In his motion for new trial, Dr. Smith complains that he was not permitted to introduce testimony and exhibits that underscore the reasonableness of his position, show that his conduct was not egregious, and establish that the law was poorly recognized. He appears to contend that he should have been permitted to introduce evidence that (1) TASB maintained a sample policy imposing a public school attendance requirement on administrators and that Dr. Smith was aware of this policy, (2) this court was unaware that the law was clearly established and held in *Barrow I* that his conduct was objectively reasonable, (3) numerous public school administrators and teachers stated that they believed a patronage policy would be legal or were uncertain as to its legal status, (4) many administrators and educators stated the existence of the TASB sample policy led

- 25 -

them to believe that a patronage policy was legal, (5) although the alleged actions were illegal, that fact was not widely disseminated, and (6) it was reasonable for him and others to be unaware of the federal right at issue in light of the imposition of the competitive business model on the educational system in Texas in the last ten years.  Dr. Smith maintains that, considering that Barrow directly attacked the reasonableness of his position, it substantially prejudiced his defense for the court to deprive him of the opportunity to present evidence to support the reasonableness of his position and that established the poor recognition that the law has received among professional educators. He contends that the presentation of this evidence would likely have resulted either in the complete elimination of the punitive damages award or in a drastic reduction of the award.

Dr. Smith's arguments are foreclosed by the Fifth Circuit's decision in *Barrow*.  As already explained, the panel concluded that the right at issue in this case "was clearly established when Smith refused to consider Barrow for the position of assistant principal," and that "no reasonable official could conclude that the application of the school district's public-school patronage policy to Barrow was constitutional."  *Barrow*, 332 F.3d at 848-49.  These conclusions not only foreclose the contention that Dr. Smith acted reasonably in applying the patronage policy to Barrow, they also preclude the assertion that it was reasonable for Dr. Smith or any other official not to have known that applying the policy to Barrow would violate her rights.  This court could not permit Dr. Smith to introduce evidence to prove either of these contentions given the fact that the law of the case stood in stark opposition.  In the court's view, if no reasonable official could conclude that the application of a patronage policy to Barrow was constitutional, there was no principled basis to allow Dr. Smith to introduce evidence that would contradict the law of the case on this point.

Moreover, Barrow argued that if Dr. Smith was permitted to introduce this evidence, she

should be allowed to introduce the *Barrow* panel opinion.  To the extent Dr. Smith sought to introduce  evidence to show that it was reasonable for him to be unaware that the application of a patronage requirement to Barrow would have violated her rights, Barrow likely would have been entitled to impeach such evidence by introducing the panel's conclusion that "no reasonable official could conclude that the application of the school district's . . . patronage policy to Barrow was unconstitutional."  *Id.* at 849.  Had the court allowed Dr. Smith's evidence and the *Barrow* opinion to be introduced, the jury would have faced the confusing task of weighing the Fifth Circuit's binding legal conclusion on the matter against factual evidence that contradicted it.  To prevent jury confusion and the possibility that the jury's decision on punitive damages could be influenced by a determination on the reasonableness of Dr. Smith's conduct that differed from the Fifth Circuit's conclusion that is the law of the case, the court prevented the introduction of Dr. Smith's evidence and of the panel opinion.

Although the court precluded Dr. Smith from introducing evidence that would have related to whether his belief was objectively reasonable, it did permit him to testify regarding his own knowledge of the law and beliefs at the time, recognizing that it was necessary that Barrow show subjective recklessness to prevail on her punitive damages claim.  This afforded him a fair opportunity, consistent with the constraints imposed by the law of the case, to counter her claim for punitive damages by attempting to show that he was subjectively unaware that his decision violated the law.

Dr. Smith also argues that, although the Fifth Circuit concluded that the law was clearly established, the law has not been sufficiently disseminated.  While this argument is unclear, he may be reasserting his argument that he did not recklessly or callously disregard Barrow's rights because

the underlying theory of discrimination is novel or otherwise poorly recognized.  The Supreme Court

did indicate in *Kolstad* that "[t]here will be circumstances where intentional discrimination does not

give rise to punitive damages liability" under a recklessness standard, and the Court appeared to

identify as one such circumstance where "[t]he underlying theory of discrimination may be novel

or otherwise poorly recognized[.]"  *Kolstad*, 527 U.S. at 536-37.  Dr. Smith cannot avail himself of

this circumstance, however, in light of the Fifth Circuit's decision in *Barrow*.  If no reasonable

official could have concluded that the application of the patronage policy to Barrow was

constitutional, then it cannot reasonably be said that the relevant law was novel or poorly

recognized.[11]  For these reasons, Dr. Smith's argument that he should have been permitted to present

the evidence identified in his motions fails.

His contention that Barrow is not entitled to punitive damages because the evidence does not

support such an award also lacks merit.  Although Dr. Smith contends that he presented

uncontroverted testimony that he did not know his alleged actions would violate Barrow's rights,

he confirmed at trial what he testified to at his August 2000 deposition.  He also acknowledged that,

before his employment at GISD, he had a suspicion of the understanding that he should not be

making employment decisions based on where someone educated her children.  This is sufficient

evidence to support a jury finding that he was subjectively conscious of a risk of illegality when he

persisted in enforcing a patronage policy with respect to Barrow, and therefore supports the jury's

assessment of punitive damages.  Accordingly, Dr. Smith's arguments pertaining to the punitive

---

[11]*Kolstad* is not a qualified immunity case, and the Court had no occasion to discuss how its conclusion regarding theories of discrimination that are novel or otherwise poorly recognized would relate to a threshold determination that the person accused of discrimination was not entitled to qualified immunity concerning the claim.

damages award against him fail to show either that the award should be eliminated or reduced.

IV

The court now considers additional arguments that Dr. Smith raises in his motion for new trial.

A

Dr. Smith advances several arguments to support his more global contention that he should have been permitted to present evidence at trial related to the issue of material and substantial disruption.  The court ruled in *Barrow v. Greenville Independent School District*, No. 3:00-CV-0913-D (N.D. Tex. Mar. 10, 2005) (Fitzwater, J.) ("*Barrow IV*"), that Dr. Smith could not "rely at trial on the defense that [Barrow's] exercise of her constitutional right to educate her children in private school materially and substantially impedes the operation or effectiveness of the state's educational program."  Slip. op. at 1.  It concluded that this was an affirmative defense that Dr. Smith was required to plead, and that allowing him to do so in his February 4, 2005 answer would unfairly surprise Barrow.  *See id*. at 1, 2.  Dr. Smith contends that the court's decision prejudiced him because a ruling of material and substantial disruption would mean that his alleged conduct did not violate Barrow's constitutional rights.

Dr. Smith's argument that the affirmative defenses he pleaded in his response to Barrow's first amended complaint were sufficient to raise this defense is foreclosed by *Barrow IV*.  *See id*. at 2 ("The court disagrees with the assertion of Dr. Smith's counsel during the pretrial conference that this defense is fairly found within the affirmative defenses pleaded within earlier versions of his answer.").  His argument that he had the right to plead the defense in response to Barrow's third amended complaint is also foreclosed by the court's holding that allowing him to do so at this stage

- 29 -

of the case would result in unfair surprise to Barrow.  *See id.* at 1.

Moreover, the reasoning that Dr. Smith advances is inadequate to support his argument.  He appears to complain that, even though the court gave Barrow permission to file a third amended complaint to seek punitive and mental anguish damages, she actually did more than that and more than doubled the size of her complaint in comparison to her first amended complaint.  The mere increase in the size of Barrow's complaint, without an explanation of why the amendments warranted the assertion of an affirmative defense, does not show that he was entitled to plead the defense in response.  Additionally, although Dr. Smith also points out that Barrow's third amended complaint alleges a wide array of claims against him, including claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and Chapter 110 of the Texas Civil Practice and Remedies Code ("Chapter 110"), he fails to explain why alleging claims under these statutes gave him the right to assert an affirmative defense to a constitutional claim, and the court holds that it did not.

Finally, Dr. Smith argues that the addition of punitive damages justified pleading the defense because the issue of material and substantial disruption is related to whether his conduct was egregious, reckless, and/or callous.  This argument cannot serve as the basis for a new trial.

First, to the extent Dr. Smith is complaining that he should have been able to introduce evidence of material and substantial disruption in defense of Barrow's punitive damages claim, he was not required to plead the defense in order to introduce such evidence.  Although the court precluded Dr. Smith from introducing evidence of material and substantial disruption in defense of Barrow's underlying constitutional claim because he had not adequately pleaded an affirmative defense, the assertion of material and substantial disruption was not an affirmative defense to her

claim for punitive damages.  In *Barrow IV* the court held that the defense was an affirmative one that Dr. Smith was required to plead as to Barrow's constitutional claim because "the contention that the exercise of Barrow's constitutional right to educate her children in private school materially and substantially impedes the operation or effectiveness of the state's educational program concerns a matter outside her prima facie case." *Id.*  To recover punitive damages, Barrow was obligated to show that Dr. Smith's conduct was either "motivated by evil motive or intent" or involved "reckless or callous indifference" to her rights.  *Smith*, 461 U.S. at 56.  Accordingly, to the extent evidence regarding material and substantial impairment was probative of whether Dr. Smith's conduct was reckless or callous, it concerned a matter that Barrow was required to prove to make out a claim for punitive damages and did not relate to an affirmative defense.  As a result, Dr. Smith did not need to plead the defense to introduce evidence pertaining to this issue to the extent it related to punitive damages.

To the extent Dr. Smith attempted at trial to introduce evidence of material and substantial disruption for a purpose other than the one that was foreclosed under the court's pretrial ruling, he did not clearly alert the court to the fact that he was attempting to do so.  In *Barrow IV* the court stated that it was "not precluding a defendant from introducing evidence of [material and substantial impairment] if relevant for another purpose, *such as addressing whether Dr. Smith should be held liable for punitive damages.*"  *Barrow IV*, No. 3:00-CV-0913-D, slip op. at 3 (emphasis added).  Had Dr. Smith made clear that he was relying on *Barrow IV* and offering the evidence for the purpose of defending against Barrow's punitive damages claim and not simply to preserve error concerning the pretrial ruling, the court would have considered the evidence in that context and, after considering any objections, might have admitted it.  Because Dr. Smith did not clearly seek to

introduce evidence of material and substantial disruption on the question of punitive damages, the court had no occasion to decide whether it was admissible for that purpose. As the court stated in *Barrow IV*, it would "decide whether the specific evidence offered is relevant and admissible, *if and when offered*." *Id.* (emphasis added).

Second, the addition of Barrow's claim for punitive damages did not entitle Dr. Smith to plead the affirmative defense of material and substantial disruption as to Barrow's constitutional claim. Nothing about the addition of Barrow's punitive damages claim vitiated the reasons the court held in *Barrow IV* that Dr. Smith was precluded from relying on the defense at trial. Barrow would still have been unfairly surprised if Dr. Smith had been allowed to plead the defense in response to her third amended complaint.

For these reasons, Dr. Smith has failed to show that a new trial is warranted.[12]

## B

Dr. Smith also argues that he was denied procedural due process at trial. He posits that Barrow's assertion of frivolous claims against GISD caused him hardship and a denial of due process.

First, he complains that the court required him to share the allotted 18½ hours of trial time with GISD and, as a result, he did not have sufficient time to present his case. This argument fails for two reasons. The most obvious one is that Dr. Smith and GISD completed their part of the trial *with time remaining*. Dr. Smith cannot reasonably contend that he did not have adequate time to

---

[12]In his motion for judgment as a matter of law, Dr. Smith also argues that the punitive damages award should be stricken or reduced because he was not allowed to present evidence and obtain a jury issue related to the issue of material and substantial impairment. For the reasons given, this argument fails.

present his case when he did not even use all of the time allotted.  His argument fails for the additional reason that he did not object at trial either to having to share trial time with GISD or to the amount of time allocated.  And—probably because he did not use all the time he was given—he did not request more time.

Second, Dr. Smith argues that having to share time with GISD forced the defendants into an unnatural alliance, in which Dr. Smith was pressured not to call certain witnesses for fear that GISD would take up Dr. Smith's allotted time trying to attack his witnesses' credibility.  This argument fails because Dr. Smith never objected to having to share time with GISD, either before the trial started or after it began.[13]

Third, Dr. Smith complains that Barrow would not have been able to enter a letter by Cobby Caputo, Esquire ("Caputo") that was introduced at trial but for the fact GISD was a defendant, since Caputo and the law firm Schwartz & Eichelbaum were GISD's lawyers, not his.  He argues that the introduction of Caputo's correspondence improperly and negatively affected his defense.  Dr. Smith neither made this objection at trial nor moved for other relief, such as a separate trial.  Accordingly, the court concludes that a new trial is not warranted on this basis.

C

Dr. Smith contends that he should have been permitted at trial to present evidence in support of a *Mt. Healthy*[14] defense.

"Under [*Mt. Healthy*] even if the government has considered an impermissible criterion in

---

[13]Dr. Smith did object to sharing peremptory strikes with GISD, which the court remedied by pretrial ruling.  He did not object to sharing trial time.

[14]*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

making a decision adverse to the plaintiff, it can nonetheless defeat liability by demonstrating that it would have made the same decision absent the forbidden consideration." *Texas v. Lesage*, 528 U.S. 18, 20-21 (1999) (per curiam). Dr. Smith argues that, based on Barrow's deposition, she would not have received the position of Assistant Principal in 1998, even if she had applied and been interviewed. He explains that, during his tenure as GISD Superintendent, he instituted a procedure for selecting administrators based on preset interview questions. The interviewer would listen for certain words and phrases in an applicant's responses and award points based on how many of the specified words and phrases the applicant used. Dr. Smith acknowledges that Barrow was not interviewed and, as a result, does not have a score for 1998. Nevertheless, Barrow was asked the preset questions in her deposition in 2001, and Dr. Smith and William Smith, GISD's current Superintendent, scored her answers. The gist of Dr. Smith's arguments is that Barrow would not have qualified for the position of Assistant Principal in 1998 based on the score she received. Dr. Smith argues that it is unreasonable to think that Barrow became less capable over the three years spanning 1998 and 2001, considering that she had the questions and the correct answers before her deposition.[15] Thus he argues that even if Barrow had applied in 1998 for the position of Assistant Principal and been interviewed, she would not have been selected. He contends the exclusion of evidence pertaining to his *Mt. Healthy* defense prejudiced him, because the evidence directly contests Barrow's claim that she would have been selected for the position of Assistant Principal if she had been interviewed.

The court did not abuse its discretion in preventing Dr. Smith from introducing at trial

---

[15]Dr. Smith maintains that the preset questions and scoring card were released to Barrow during discovery.

Barrow's responses to the questions posed in her 2001 deposition. The court excluded the evidence based on its questionable relevance. That Barrow responded one way in her deposition in 2001 is not probative of whether she would have responded the same way in an interview in 1998.[16] Indeed, it is not difficult to imagine several factors that could have affected her performance during the deposition. A potentially significant one is the context in which Barrow ultimately answered the preset interview questions. Barrow's performance could have been detrimentally impacted by having to respond to the questions during the stress of a deposition rather than during an employment interview. Although employment interviews can be stressful, common sense teaches that there is often a significant difference between how one answers questions posed by a lawyer and those asked by a panel during an interview. Her answers could have been affected by the materially different purposes for which the questions were being asked. And, significantly, during a deposition, when a person is testifying under oath, she can be expected to choose her words carefully—to tell the whole truth and nothing but the truth—rather than to use the specific words and phrases that might increase the number of points she is awarded.

---

[16]The court addressed this issue in a related context when it decided Dr. Smith's summary judgment motion in *Barrow III*, and its reasoning supports the court's decision at trial.

> The interview questions were asked of Barrow three years after the employment decision was made, and she was questioned by opposing counsel in the context of a deposition rather than by school administrators in a job interview. To conclude that the scores from Barrow's deposition testimony establish beyond peradventure that Barrow would not have been a finalist, the court would have to infer that her answers during the 2001 deposition would have been the same in a 1998 job interview, and that her answers were scored as they would have been in 1998.

*Barrow III*, 2005 WL 39086, at *5.

D

Dr. Smith also contends that the court erred in refusing to include instructions in the court's charge that advised the jury of the circumstances under which a patronage policy could be legal. He argues that, even if he could not attempt to avoid liability on the basis of a material and substantial disruption, the error prejudiced him regarding punitive damages, because the jury instructions created the impression that a patronage policy would always violate Barrow's rights. Although it is true that the enforcement of a patronage policy can be legal if the school district or school official shows that the school's educational mission will be materially and substantially impaired, as the court has already explained, it decided in *Barrow IV* that Dr. Smith was procedurally barred from presenting the defense of material and substantial impairment at trial. Because there was no such evidence adduced at trial, the court did not err in refusing to instruct the jury concerning the defense of material and substantial impairment. *See, e.g., Jackson v. Taylor*, 912 F.2d 795, 798 (5th Cir. 1990) ("[I]t is error to refuse a jury instruction only if there are pleadings and sufficient evidence to support the instruction.").

V

The court now addresses Barrow's arguments in her preliminary motion for attorney's fees and in her motion to alter or amend judgment and motion for judgment as a matter of law that pertain to her entitlement to attorney's fees and/or costs.

In a memorandum opinion and order that the court filed in conjunction with the judgment in this case, it noted that the judgment provided that Barrow would bear her own taxable costs of court, subject to amending the judgment in response to a timely-filed post-judgment motion. *See Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-CV-0913, slip. op. at 1-2 (N.D. Tex. Mar. 25,

2005) (Fitzwater, J.) ("*Barrow V*").  The court explained that, although Barrow had prevailed against

Dr. Smith and would normally recover her taxable costs of court as a matter of course, Dr. Smith

had made Rule 68 offers of judgment that might result in denying Barrow some of these costs.  *Id.*

After the court accepted the verdict, and after considering counsels' positions concerning the most

efficient manner in which to proceed, it directed Barrow to file only a summary motion for

attorney's fees, excluding the amount of fees sought or supporting documentation, until the court

had the opportunity to review Dr. Smith's offers of judgment.  Timely post-trial motions have been

filed, and the court now addresses the arguments that pertain to the award to Barrow of attorney's

fees and court costs.

A

Barrow argues in her motion to alter or amend judgment and motion for judgment as a matter

of law that the court erred in refusing to grant her costs against Dr. Smith.  She contends that a

presumption exists that a prevailing party is entitled to recover her costs, and that no law supports

the position that a prevailing civil rights plaintiff can be denied her costs because a defendant

allegedly made a Rule 68 offer of judgment.  Although under Rule 54 a prevailing party is

presumptively entitled to recover her costs, *see Wilson*, 160 F.3d at 212, "Rule 68 . . . removes the

presumption in favor of the prevailing party, and provides for the assessment of costs against a

prevailing plaintiff who obtains a judgment less favorable than the offer of judgment made by

defendant."  *Pub. Interest Research Group, Inc. v. Struthers-Dunn, Inc.*, 1988 WL 147639, at *2

(D.N.J. Aug. 16, 1988).  Rule 68 explicitly provides that, "[i]f the judgment finally obtained by the

offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making

of the offer."  Rule 68.  Therefore, the question whether Barrow is entitled to costs will depend on

whether Dr. Smith made valid offers of judgment under Rule 68 and whether the judgment Barrow finally obtained is more favorable than Dr. Smith's offers. It must be kept in mind that "the term 'costs' in Rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority." *Marek v. Chesny*, 473 U.S. 1, 9 (1985). Because Barrow pursued her constitutional claims under § 1983, as a prevailing plaintiff, Barrow would be entitled to recover reasonable attorney's fees as part of her costs pursuant to 42 U.S.C. § 1988. *See id*.; 42 U.S.C. § 1988. Thus in the instant case, the "costs" mentioned in Rule 68 encompass not only Barrow's taxable court costs, but also her reasonably-incurred attorney's fees. *See Marek*, 473 U.S. at 9.

In her preliminary motion for attorney's fees, Barrow argues that Dr. Smith's offers of judgment[17] have no impact on her entitlement to attorney's fees and related litigation costs.[18] She advances virtually the same arguments in her briefs in support of her motion to alter or amend

---

[17]Dr. Smith was involved in three different offers of judgment. The first was made jointly by Dr. Smith and GISD on August 23, 2000 for $30,000. This amount specifically encompassed "any and all items of damage, other than attorney's fees, which are to be awarded separately by the Court." Ds. Aug. 23, 2000 Offer of Judgment at 1. The second was made solely by Dr. Smith on January 18, 2001 for $100,000, which encompassed "any and all items of damage and recovery sought by Plaintiff, including attorney's fees." Dr. Smith Jan. 18, 2001 Offer of Judgment at 1. The third was again made jointly with GISD on September 8, 2004 for $154,666.00, which encompassed "any and all items of damage and recovery sought by Plaintiff, including attorney's fees." Ds. Sept. 8, 2004 Offer of Judgment at 1.
    Although she specifically addresses most of her arguments in her preliminary motion for attorney's fees to defendants' August 2000 offer of judgment, she also posits at one point that Dr. Smith's January 2001 offer suffers from the same defects. Unless the context indicates otherwise, the court will address Barrow's arguments as if they were specifically directed to both the August 2000 and January 2001 offers of judgment.

[18]Although Barrow advances several arguments in support of her contention that Dr. Smith's offers of judgment have no impact on her entitlement to attorney's fees and costs, she does not cite any supporting authority.

judgment and motion for judgment as a matter of law in support of the contention that the court erred in refusing to grant her costs against Dr. Smith.  Some of Barrow's arguments challenge the validity of the offers of judgment Dr. Smith made, while others appear to be directed to showing that the judgment she ultimately received is more favorable than Dr. Smith's offers.  The court will address her arguments in turn.

B

The court addresses first Barrow's challenges to the validity of Dr. Smith's offers of judgment.

1

Barrow appears to argue that Dr. Smith's failure to admit liability and agree to equitable relief invalidates his offers.  She avers that he did not offer to resolve the unlawful employment condition that he imposed, a promotion, injunctive prohibition on his future unlawful edicts, or a GISD policy prohibiting use of a patronage policy when making employment decisions.  Barrow also complains that the offers lacked an admission of liability and an agreement to enter a declaratory judgment declaring use of the patronage policy that violated the law.

Barrow's argument that Dr. Smith's offers are invalid because he did not admit liability lacks merit.  The court agrees with other courts that hold that "Rule 68 does not require that offers of judgment include[ ] admissions of liability." *Jolly v. Coughlin*, 1999 WL 20895, at *8 (S.D.N.Y. Jan. 19, 1999); *see also Staples v. Wickesberg*, 122 F.R.D. 541, 544 (E.D. Wis. 1988) (considering the same argument raised here and rejecting it as being "utterly without merit"); *Mite v. Falstaff Brewing Corp.*, 106 F.R.D. 434, 435 (N.D. Ill. 1985) (denying plaintiff's objections to Rule 68 offer of judgment that explicitly disclaimed admission of liability, finding that offer was technically

- 39 -

sufficient).  As one court has observed, disclaiming liability in Rule 68 offers of judgment appears

to be commonplace.  *Aynes v. Space Guard Prods., Inc.*, 201 F.R.D. 445, 450 (S.D. Ind. 2001)

(citing cases); *see, e.g.*, *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 349 n.2 (1981) (noting offer

of judgment that contained disclaimer of liability); *MRO Communs., Inc. v. AT&T Co.*, 197 F.3d

1276, 1279 (9th Cir. 1999) (same); *Chathas v. Local 134 Int'l Bhd. of Elec. Workers*, 233 F.3d 508,

511 (7th Cir. 2000) (noting that "[t]he essence of the offer was that the preliminary injunction would

be made permanent, but that the offer was not to be construed as an admission of liability."); 

*Colondres v. Scoppetta*, 290 F. Supp. 2d 376, 384 (E.D.N.Y. 2003) (noting that "[d]efendants' Rule

68 offer specifically stated that it was not to be construed as an admission of liability.").  Rule 68

itself does not explicitly prevent this practice.  Moreover, "[t]he policy behind Rule 68 is to

'encourage settlement and avoid litigation.'" *Jason D. W. by Douglas v. Houston Indep. Sch. Dist.*,

158 F.3d 205, 212 (5th Cir. 1998) (quoting *Marek*, 473 U.S. at 5).  "[R]equiring a clear admission

of liability in every offer of judgment would . . . reduce the effectiveness of Rule 68 as a tool to

encourage the settlement of all lawsuits." *Jolly*, 1999 WL 20895, at *8.  Accordingly, Dr. Smith's

offers of judgment are not rendered invalid because they do not contain an admission of liability.

Nor are Dr. Smith's offers invalid because they failed to provide for the equitable or

declaratory relief Barrow listed or  to manifest his assent to issuance of a declaratory judgment.

Barrow's first amended complaint, which was her operative complaint at the time Dr. Smith made

his contested offers of judgment, did pray for monetary damages as well as injunctive and

declaratory relief.  Nevertheless, Dr. Smith was not obligated to offer each type of relief in his Rule

68 offers.  Rule 68 appears to allow a party who makes an offer to specify what he is willing to give

up in exchange for allowing a judgment to be entered against him.  *See* Rule 68 ("[A] party

defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property *or to the effect specified in the offer*[.]" (emphasis added)).  The court in *Leach v. Northern Telecom, Inc.*, 141 F.R.D. 420 (E.D.N.C. 1991), rejected an argument similar to Barrow's in deciding the plaintiff's motion to strike the defendant's offer of judgment.  *Id*. at 428.  The plaintiff argued that the offer was insufficient because it did not include the equitable relief she sought in her complaint.  *Id*.  The court held that "[n]othing in Rule 68 requires equitable relief to be included as part [of] an offer of judgment when the complaint seeks both equitable and monetary relief."  *Id*.; *see also* 13 *Moore's Federal Practice* § 68.04[5], at 68-28 (3d ed. 2005) (quoting *Leach* and observing that "[a]n offer responding to a complaint seeking both damages and injunctive relief need not specify some element of both."); *but see Whitcher v. Town of Matthews*, 136 F.R.D. 582, 585 (W.D.N.C. 1991) (concluding that "offers including only monetary damages but excluding equitable or injunctive relief would . . . be inconsistent with [Rule 68]" and observing that "had [d]efendant made Offers of Judgment excluding the portion of the complaint addressing injunctive relief, the offer would have been ineffective[.]").  *Leach*'s holding is sound.  As one recognized treatise explains, "[i]f a defendant may offer less than all the compensatory damages sought . . . there is no reason why it may not offer only one form of relief when a complaint seeks both injunctive and damage remedies."  13 *Moore's Federal Practice* § 68.04[5], at 68-28 (3d ed. 2005).

2

Barrow also argues that Dr. Smith's offers of judgment imposed conditions that Rule 68 does not permit.  Specifically, she maintains that the offers were conditioned on her willingness to enter into a settlement and release of all claims made the basis of her suit.  *See* Ds. Aug. 23, 2000 Offer

of Judgment at 1 ("This offer of judgment is made in exchange for a settlement and release of all claims by [Barrow] against Defendants . . . arising from Plaintiff's alleged injuries made the basis of this litigation."); Dr. Smith Jan. 18, 2001 Offer of Judgment at 1 (providing similarly).  She argues that Rule 68 is not an alternative method for making settlement offers, but provides for "an offer to allow judgment to be taken against the defending party[.]"  Rule 68. Barrow contends that Dr. Smith's offers are settlement offers, not Rule 68 offers to allow a judgment to be taken against the defending party, because he never said that he would allow a judgment to be taken against him.

Barrow's argument implies that a Rule 68 offer cannot also be a settlement offer.  This implication is incorrect.  Even though an offer made under Rule 68 is termed an "offer of judgment," this does not negate the fact that an offer made under this Rule is a settlement offer in that it proposes terms upon which the controversy between the parties will be resolved.  Several courts, including the Supreme Court, have suggested that offers made under Rule 68 are, in fact, settlement offers.  *See, e.g.*, *Delta Air Lines*, 450 U.S. at 350 ("Rule 68 prescribes certain consequences for *formal settlement offers* made by 'a party defending against a claim.'" (emphasis added)); *id.* at 363 (Powell, J., concurring) ("A Rule 68 offer of judgment is a *proposal of settlement*. . . ." (emphasis added)); *First Nat'l Bank v. FDIC*, 196 F.3d 1186, 1189 (10th Cir. 1999) ("'Rule 68 permits a party defending against a claim to recover all costs incurred after the making of an offer of judgment if the offeree rejected the *settlement offer* and ultimately was awarded less at trial.'" (quoting *Am. Ins. Co. v. El Paso Pipe & Supply Co.*, 978 F.2d 1185, 1193 (10th Cir. 1992) (emphasis added)); *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) ("Rule 68 permits a party defending against a claim to make a *settlement offer* and thereby avoid any liability for costs, including attorney's fees, incurred after the making of the offer." (emphasis added)); *Guerrero v. Cummings*, 70 F.3d 1111, 1113 (9th

Cir. 1995) (referring to offer made under Rule 68 as "Rule 68 settlement offer"); *Bynum v. Equitable Mortgage Group*, 2005 WL 818619, at *5 (D.D.C. Apr. 7, 2005) ("[A]n accepted Rule 68 offer of judgment constitutes a settlement between the parties making and accepting the offer.").

The terminology Dr. Smith used in his offers, in which he conditioned them on the release of Barrow's claims, is not prohibited by Rule 68. Including such language simply makes explicit what the operation of the Rule already provides on its own. "Under Rule 68 . . . a party may compromise a claim by offering a settlement to be entered against it in a form of a final judgment. By operation of the rule, if the offer is accepted, all claims are settled and the case is concluded." *Williams v. J.C. Penney Co.*, 1991 WL 150617, at *1 (S.D.N.Y. Jul. 30, 1991). If Barrow had accepted one of Dr. Smith's offers of judgment, with or without the contested language, her claims against him would have been settled via the resulting judgment.

Finally, that Dr. Smith did not explicitly state that he was allowing a judgment to be taken against him does not render his offers ineffective under Rule 68. The language of Dr. Smith's offers clearly indicates that he was making them under Rule 68. *See* Ds. Aug. 23, 2000 Offer of Judgment at 1 ("Defendants . . . present their Offer of Judgment pursuant to Rule 68[.]"); Dr. Smith Jan. 18, 2001 Offer of Judgment at 1 ("Defendant offers Judgment in the amount of $100,000.00 . . . as provided for by Rule 68."). Accordingly, it was sufficiently clear from the offers that Dr. Smith made that he was offering to allow a judgment to be entered against him according to the operation of the Rule. For the foregoing reasons, Barrow has failed to show that Dr. Smith's offers of judgment are not valid under Rule 68.

C

The court now considers whether the judgment Barrow finally obtained is more favorable than Dr. Smith's offers of judgment. Barrow appears to rely on both monetary and non-monetary factors in attempting to show that the judgment she obtained is more favorable than the offers. The court addresses monetary factors here and non-monetary factors below.

1

The court first considers whether the judgment Barrow obtained is more favorable than defendants' August 2000 offer of judgment for $30,000.

Barrow points out that the court awarded her judgment for $15,455.00 plus prejudgment interest, which she calculates to be $2,967.44. The judgment also awarded her $20,000 in punitive damages. Adding these sums together, Barrow obtained a judgment in the amount of $38,422.44. In an argument apparently directed specifically to defendants' August 2000 offer, Barrow maintains that this amount is more favorable, by at least 28%, than the offer defendants made.

Defendants' offer provides that "[d]efendants offer Judgment in the amount of $30,000.00. . . . This lump-sum amount encompasses any and all items of damage, other than attorney's fees, which are to be awarded separately by the Court." Ds. Aug. 23, 2000 Offer of Judgment at 1. In *Marek* the Supreme Court explained that Rule 68 does not require defendants to "itemize the respective amounts being tendered for settlement of the underlying substantive claim and for costs." *Marek*, 473 U.S. at 6. It did state, however, that the offer must "be one that allows judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued." *Id*. (emphasis omitted). Because "costs" in the instant case include not only taxable costs but also attorney's fees, defendants' offer must have allowed judgment to be taken as to both.

- 44 -

Since defendants' offer explicitly provided for the assessment of attorney's fees, Barrow's apparent intimation that defendants did not agree to pay attorney's fees in their offer is incorrect. Defendant's offer, however, does not mention court costs. This fact does not render defendants' offer invalid. The Supreme Court explained in *Marek* that

> it is immaterial whether the offer recites that costs are included, whether it specifies the amount the defendant is allowing for costs, or, for that matter, whether it refers to costs at all. As long as the offer does not implicitly or explicitly provide that the judgment *not* include costs, a timely offer will be valid.

*Id*. Defendants' offer neither explicitly nor implicitly precludes a judgment for costs.

A separate, yet relevant, inquiry is whether court costs are included in the $30,000 sum that defendants offered. The offer explicitly excludes attorney's fees from this amount but is silent as to court costs. If the court concludes that the sum of $30,000 does not include court costs, the court will award them separately. *See id*. ("[I]f the offer does not state that costs are included and an amount for costs is not specified, the court will be obliged by the terms of the Rule to include in its judgment an additional amount which in its discretion it determines to be sufficient to cover the costs." (citation omitted)). It is evident from Barrow's briefing that she is unsure whether defendants' offer includes court costs. In her reply brief supporting her motion to alter or amend judgment and motion for judgment as a matter of law, she avers at one point that defendants' offer is unclear as to court costs. At another point in the same brief she posits that it did not include court costs. In her preliminary motion for attorney's fees, however, Barrow contends that defendants' offer did include her court costs. The court need not clear up this confusion because, as it will explain, the judgment that Barrow ultimately obtained is more favorable than defendants' offer, regardless whether the $30,000 offer includes court costs.

- 45 -

In her motion to alter or amend judgment and motion for judgment as a matter of law, Barrow argues that, in order to determine if she obtained a judgment more favorable than defendants' offer, her costs must be determined because they are part of the judgment.[19]   Her preliminary motion for attorney's fees suggests that her argument is premised on the inclusion of court costs in defendants' $30,000 offer.   There Barrow argues that "because the amount offered by [defendants'] included cost[s] of court in the 'lump-sum', the comparison required by Rule 68 requires that the district court include in the judgment obtained . . . Plaintiff's costs of court."   P. Prelim. Mot. for Atty's Fees at 8.

The court has located no Fifth Circuit case that has  specifically addressed whether pre-offer attorney's fees and/or costs should be considered as part of the "judgment finally obtained" for conducting the comparison called for by Rule 68.   Other circuits that have considered the issue appear to conclude, however, that, if the offer of judgment includes costs and attorney's fees, the fees and costs accrued at the time of the offer should be added to the amount of the judgment for purposes of the Rule 68 comparison.   *See, e.g., Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1020 (9th Cir. 2003) ("Where a Rule 68 offer explicitly states that it is inclusive of prejudgment interest and pre-offer costs and attorneys' fees, the judgment to which the offer is compared must include these items if they are awarded."); *Tunison v. Continental Airlines Corp.*, 162 F.3d 1187, 1192 (D.C. Cir. 1998) ("[S]ince the offer includes pre-offer costs, the amount of

---

[19]The court does not construe this argument as advancing the position that court costs incurred after the offer of judgment was made should be considered in addition to pre-offer costs in determining the value of the judgment finally obtained.   In any case, such an argument is foreclosed by the Supreme Court's decision in *Marek*.   In *Marek* the Court recognized that post-offer costs should not be considered in determining whether the judgment finally obtained is more favorable than an offer of judgment.   *See Marek*, 473 U.S. at 7; *see also Marryshow v. Flynn*, 986 F.2d 689, 692 (4th Cir. 1993).

judgment used for comparison must include pre-offer costs as well, if they are to be awarded."); *Scheeler v. Crane Co.*, 21 F.3d 791, 792-93 (8th Cir. 1994) (noting that offer of judgment was "for a full settlement of plaintiff's claims, including costs and attorney fees accrued" and finding that "[i]f the plaintiff's payment of her own attorney fees was part of the Rule 68 offer, it is surely equitable that attorney fees be included as part of the recovery.  This is the only way in which the offer can be fairly matched against the recovery."); *Marryshow v. Flynn*, 986 F.2d 689, 692 (4th Cir. 1993) ("Because the offer includes costs then accrued, to determine whether the judgment obtained is 'more favorable,' . . . the judgment must be defined on the same basis – verdict plus costs incurred as of the time of the offer of judgment." ); *see also Grosvenor v. Brienen*, 801 F.2d 944, 945, 948 (7th Cir. 1986) (holding that "pre-offer attorney's fees must be added to the judgment award for the purposes of determining whether the result obtained by a plaintiff is more favorable than the offer of judgment he rejected" in case where court observed that defendant's $5,000 offer of judgment "included costs and attorney's fees accrued up to the date of the offer.").  In considering pre-offer costs or attorney's fees as part of the judgment finally obtained, the courts in *Marryshow* and *Scheeler* were clearly motivated by an interest in achieving an accurate and equitable comparison of the offers of judgment to the judgment the plaintiff ultimately received.  *Marryshow* explained that

> [i]t is neither logical nor consistent with the rule and applicable authority to compare an offer of judgment which includes all costs, including attorney's fees, and a judgment finally obtained which includes no costs.  To make a proper comparison between the offer of judgment and the judgment obtained when determining, for Rule 68 purposes, which is the more favorable, like "judgments" must be evaluated.

*Marryshow*, 986 F.2d at 692; *see also Scheeler*, 21 F.3d at 793.

- 47 -

Assuming *arguendo* that defendants' $30,000 offer did not include court costs, the total value of the offer would actually be $30,000 plus Barrow's pre-offer attorney's fees and costs, because the court would award these items separately.  In accord with the cases cited above, in conducting the analysis called for by Rule 68, the court must compare this amount with the value of the judgment Barrow obtained—$38,422.44—plus her pre-offer attorney's fees and costs.  *See Tunison*, 162 F.3d at 1192 (holding that where plaintiff obtained damage award of $0 and defendant's offer of judgment for $1,000 did not include costs, even if plaintiff was entitled to costs, "the appropriate comparison under Rule 68 would [be] between $1,000 plus pre-offer costs and $0 plus pre-offer costs.").  This ensures that like "judgments" are compared, as the court in *Marryshow* counseled. Because Barrow's pre-offer attorney's fees and costs will represent the same figure on both sides of the Rule 68 equation, the court may disregard them for purposes of the comparison.  This explains why pre-offer attorney's fees and costs need only be considered when the offer made actually includes these items.  Because the judgment Barrow obtained worth $38,422.44 is more favorable than defendant's offer of $30,000, her ability to recover her post-offer costs and attorney's fees is not affected by defendants' offer.

On the other hand, if defendants' $30,000 offer *did* include court costs, to determine whether the judgment she obtained is more favorable than defendants' offer, the court must ascertain the amount of recoverable court costs Barrow had incurred by the time of defendants' offer and add that amount to the $38,422.44 judgment.  The court need not consider her pre-offer attorney's fees because, as explained above, they would be considered on both sides of the Rule 68 equation. Accordingly, the "judgment finally obtained" by Barrow under this scenario would be $38,422.44 plus her pre-offer court costs.  This is certainly more favorable than $30,000.  Thus even if

defendants' $30,000 offer included court costs, the judgment Barrow obtained is more favorable and defendants' offer would not affect her recovery of post-offer costs and attorney's fees.

2

The court next considers whether Dr. Smith's individual offer of $100,000 in January 2001 is more favorable than the judgment Barrow obtained. The court again restricts its analysis to monetary considerations.

Dr. Smith's offer is patently more favorable than the relief awarded in the judgment. Nevertheless, Barrow maintains that Dr. Smith's offer did not come close to compensating her for her monetary damages, costs of court, and accrued attorney's fees incurred to the date of the offer, much less the equitable relief sought. Construing Barrow's argument somewhat generously, she may be suggesting that, for purposes of determining whether Dr. Smith's offer is less favorable than the judgment she obtained, the court must consider as part of the judgment both her attorney's fees and the court costs she incurred before his offer.

The court must first address whether Dr. Smith's $100,000 offer included court costs and attorney's fees. The offer provides, in relevant part, that "[t]his lump-sum amount encompasses any and all items of damage and recovery sought by Plaintiff, including attorney's fees." Dr. Smith Jan. 18, 2001 Offer of Judgment at 1. It is clear from this language that the sum of $100,000 includes attorney's fees. But as was the case with defendants' August 2000 offer, Dr. Smith's offer does not explicitly provide whether it includes court costs. As distinguished from defendants' $30,000 offer, the question whether the judgment Barrow obtained is more favorable than Dr. Smith's offer may depend significantly on whether the offer includes court costs.

"Courts apply general contract principles to interpret Rule 68 offers of judgment." *Basha*

- 49 -

*v. Mitsubishi Motor Credit of Am., Inc.*, 336 F.3d 451, 453 (5th Cir. 2003) (citing *Mallory v. Eyrich*,

922 F.2d 1273, 1279 (6th Cir. 1991), and *Radecki v. Amoco Oil Co.*, 858 F.2d 397, 400 (8th Cir.

1988)). In *Basha* the Fifth Circuit determined that the district court did not commit clear error in

concluding that the offer of judgment included attorney's fees where "the circumstances surrounding

the offer, if not the text itself, strongly support[ed] the view that the parties intended to settle all

claims, including those for attorney's fees," even though the offer did not address attorney's fees

explicitly. *Id*. at 453-54. The court considered extrinsic evidence in reaching its conclusion. It

noted that defendants' counsel sent plaintiff's lawyer a letter one week before the offer's acceptance

that stated "that the defendants agreed to 'pay an additional $2,000 in exchange for a full settlement

of this matter with prejudice against these entities and a defense and indemnification as to any

remaining parties to this lawsuit.'" *Id*. at 454. The court also observed that defendants' lawyer

informed plaintiff by letter several days after the offer's acceptance "that the offer of judgment

would 'conclude this case as to our clients.'" *Id*. The court concluded that "[t]hese two letters, and

[plaintiff's] active role in preparing the offer, show that [defendants'] offer was a reflection of the

parties' efforts to secure a settlement and dismissal of the entire claim." *Id*.

   *Basha* supports the conclusion that an offer of judgment can include costs or attorney's fees

even if it does not mention them explicitly. Such a conclusion is also supported by the Seventh

Circuit's decision in *Nordby v. Anchor Hocking Packaging Co.*, 199 F.3d 390 (7th Cir. 1999). In

*Nordby* the court held that an offer of judgment that provided for "judgment in the amount of

$56,003.00 plus $1,000 in costs as one total sum as to all counts of the amended complaint"

unambiguously included attorney's fees, even though they were not mentioned. *Id*. at 391-92. It

observed that the language "[o]ne total sum as to all counts of the amended complaint" could "only

mean one amount encompassing all the relief sought in the counts," and it recognized that "[o]ne of those counts specified attorneys' fees as part of the relief sought." *Id*. at 392.

This court similarly concludes that Dr. Smith's offer unambiguously included court costs, even though they were not specifically mentioned in his offer. As stated earlier, the offer provides that the $100,000 offered "encompasses any and all items of damage and recovery sought by Plaintiff, including attorney's fees." Just as the court in *Nordby* concluded that the language of the offer in that case could "only mean one amount encompassing all the relief sought in the counts," this language can only mean one amount encompassing all items of damage and recovery that Barrow sought. Barrow clearly indicated in her first amended complaint—her operative complaint at the time Dr. Smith made his offer—that she sought to recover "all court costs and expenses incurred to bring this action." P. First Am. Compl. ¶ 5.5. Accordingly, the court concludes that Dr. Smith's $100,000 offer includes both court costs and attorney's fees. Because it does, for purposes of conducting the comparison called for by Rule 68, the court must compare Dr. Smith's offer to the value of the judgment Barrow obtained ($38,422.44), plus the value of the sum of Barrow's pre-offer court costs and attorney's fees, to ensure the comparison of like "judgments."

To ensure that the policy objectives of 42 U.S.C. § 1988 are upheld, it is especially important to compare like "judgments" when a court is performing the Rule 68 comparison in a case brought under § 1983. This requires that pre-offer attorney's fees be considered in the Rule 68 comparison. *See Grosvenor*, 801 F.2d at 946-48 (discussing reasoning for including such fees in comparison of offer and judgment obtained). Excluding pre-offer attorney's fees and costs from the Rule 68 analysis would "strip [civil rights] plaintiffs of the benefits of § 1988, and would disregard the value to society of the effective enforcement of civil rights." *Id*. at 948. Accordingly, reasonably-incurred

pre-offer costs and attorney's fees should be included as part of the judgment that Barrow finally

obtained for purposes of determining whether the judgment is more favorable than Dr. Smith's offer.

Because Barrow's reasonably-incurred pre-offer costs and attorney's fees will be considered,

the court is unable to determine at this time whether the "judgment finally obtained" is more

favorable than Dr. Smith's offer.  Because she was not required to do so, Barrow has not yet filed

a fee application that enables the court to determine the value of her reasonable pre-offer costs and

attorney's fees.  Accordingly, Barrow must file a complete attorney's fee application within 20 days

of the date this memorandum opinion and order is filed, delineating those fees and costs incurred

before Dr. Smith's January 18, 2001 offer of judgment from those incurred afterward and delineating

those fees and costs incurred before Dr. Smith's and GISD's September 8, 2004 offer of judgment

from those incurred afterward.[20]  To reduce expenses and filing burdens, she may adopt and/or

supplement materials already on file with the clerk provided (1) she clearly identifies by title and

file date the materials adopted and/or supplemented (2) clearly identifies the materials already on

file and the new materials she is filing that she asks the court to review, and (3) clearly identifies (at

---

[20]Mirroring the language in Dr. Smith's offer, defendants' September 8, 2004 offer in the amount of $154,666.00 states that the "lump-sum amount encompasses any and all items of damage and recovery sought by Plaintiff, including attorney's fees."  Ds. Sept. 8, 2004 Offer of Judgment at 1.  Because both Barrow's second amended complaint (the operative complaint as to GISD at the time of the offer) and her first amended complaint (the operative complaint as to Dr. Smith at the time of the offer) stated that Barrow was seeking to recover court costs, the court concludes, for reasons stated above, that the $154,666.00 amount specified in the offer included Barrow's pre-offer costs and attorney's fees.  This conclusion is also supported by a form defendants attached to their offer entitled, "Acceptance by Plaintiff," which was apparently intended for Barrow's use to indicate her acceptance of defendants' offer.  This form includes a sentence that provides, "I acknowledge that this lump-sum amount includes compensation for all damages, costs and attorney's fees."  *Id.* at 4.  This unequivocally manifests defendants' intent to include costs in the $154,666.00 sum specified.  Accordingly, the nature of the comparison called for under Rule 68 will be the same as for Dr. Smith's January 2001 offer.  If necessary, the court will conduct the appropriate Rule 68 analysis as to this offer once it has reviewed Barrow's fee application.

least in her brief) the attorney's fees and costs that pre-date January 18, 2001 and September 8, 2004. In her brief, she must also cite materials already on file in the manner required by N.D. Tex. R. 7.2(e). The application (both as to any materials already on file and as to those filed in response to today's decision) must meet the usual standards that govern such fee applications and must allow the court to determine, not only what fees and costs were incurred, but when they were incurred. Dr. Smith may file his response and brief within 20 days of the date the application is filed. He may also adopt materials already on file, provided he complies with the identification and briefing requirements specified for Barrow. Barrow may file a reply brief, but not new evidence, within 15 days after Dr. Smith's response and brief are filed. The court will consider the amount of Barrow's attorney's fee award after considering these materials and applying Rule 68 to the decisional process.

## D

Now that the court has addressed monetary considerations pertinent to the comparison called for under Rule 68, it will turn to any non-monetary considerations that Barrow advances.

Barrow appears to argue that defendants' August 2000 offer of judgment was also less favorable than the judgment obtained because it failed to provide for equitable relief. Specifically, she avers that it did not offer to promote her, to restrict Dr. Smith's future unlawful conduct, or to remove Dr. Smith from the decisionmaking process for Barrow's future promotion applications or provide other equitable relief that she sought. She posits that in August 2000 Dr. Smith was still the GISD Superintendent and that GISD still had delegated to Dr. Smith the final authority to make interview and promotion recommendations. She also maintains that, at that time, Dr. Smith had never retracted his statement of July 30, 1998 to Barrow and her husband that she had "no future"

as an administrator with GISD as long as her children attended the Greenville Christian School. Barrow also appears to indicate that the Fifth Circuit's decision in *Barrow*, which she maintains is incorporated into the judgment via the court's charge, also shows that the judgment is more favorable than Dr. Smith's January 2001 offer.

The court declines to accept Barrow's apparent reliance on the failure of these offers to provide for equitable relief to show that the judgment is more favorable than the offers. The language of Rule 68 identifies the "judgment finally obtained" as the standard against which the court must compare the offer of judgment. *See* Rule 68 ("If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after making the offer."); *Johnston v. Penrod Drilling Co.*, 803 F.2d 867, 870 (5th Cir. 1986); *see also Spencer v. Gen. Elec. Co.*, 894 F.2d 651, 664 (4th Cir. 1990) ("[T]he unambiguous language of Rule 68 must be given its plain meaning and accordingly, in making the comparison required by the Rule, a trial court should consider only the terms of the 'judgment finally obtained' by the offeree, and nothing more."), *abrogated on other grounds by Farrar v. Hobby*, 506 U.S. 103 (1992). The judgment in the instant suit did not award equitable relief. Thus it is no more favorable in this respect than are defendants' or Dr. Smith's offers of judgment.

Additionally, it appears that Barrow has directed the court to conditions that existed at the time of defendants' August 2000 offer to show that this litigation has remedied adverse conditions that defendants did not offer to correct. Even if the litigation has yielded positive results not addressed either in defendants' or Dr. Smith's offers of judgment, these results are not part of the judgment Barrow obtained. *See Spencer*, 894 F.2d at 663 (holding that district court erred in including non-judgment relief as part of judgment plaintiff finally obtained in determining whether

judgment was more favorable than offer of judgment); *Jolly*, 1999 WL 20895, at *9 (observing that "Rule 68 makes no provision for the comparison of those aspects of the case that are not reflected in the judgment" and noting that the comparison should not be "between the offer and any other relief [besides the judgment obtained] that may have resulted from the litigation process."). Consequently, the court will not consider them in determining the legal effect of Dr. Smith's offers of judgment. The court likewise will not take into account the Fifth Circuit's decision in *Barrow* in determining whether the judgment obtained is more favorable than Dr. Smith's offer. The decision in *Barrow* was not incorporated into the judgment via the court's charge, as Barrow contends, and is therefore not part of the "judgment finally obtained."

## VI

Dr. Smith requests that the court award him reasonable attorney's fees against Barrow and her counsel under § 1988. The court declines this request.

## A

"Prevailing defendants are entitled to attorneys' fees under . . . section 1988 only upon a showing that the plaintiff's action was frivolous, unreasonable, groundless, or made in bad faith, or that the plaintiff continued to litigate after it clearly became so." *Trevino v. Holly Sugar Corp.*, 811 F.2d 896, 906 (5th Cir. 1987). Dr. Smith asserts three different reasons for why he is entitled to attorney's fees. First, he contends that Barrow voluntarily dismissed claims against him under Title VII, Chapter 110, Article I, § 6 of the Texas Constitution ("Article I, § 6"), and the claims against him in his official capacity, to avoid an unfavorable judgment on the merits. He argues that each claim was frivolous, groundless, or without merit. Second, he contends that Barrow's free exercise claim, while not dismissed voluntarily, was frivolous, groundless, or without merit. Third, he posits

that Barrow's pursuit of her parental rights claim became frivolous after she rejected offers of judgment that would have made her whole.

B

Barrow contends that she prevailed on her primary claim concerning her constitutional right to exercise her choice to provide a private religious education for her children without employment discrimination by Dr. Smith. She urges that all of her causes of action were interrelated with her constitutional claims pertaining to her parental rights, and that Dr. Smith did not prevail on any distinct claims that were not related to her central contentions surrounding her legal rights as a parent. She argues that only claims that are based on different facts and legal theories can be considered unrelated to each other so as to allow a defendant to recover attorney's fees when a plaintiff succeeds in the litigation.

"Only a 'prevailing party' in a civil rights action is eligible for an award of attorney's fees under section 1988." *Associated Builders & Contractors, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 377 (5th Cir. 1990). "To qualify as a prevailing party, the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement." *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002) (citing *Farrar*, 506 U.S. at 111-12). Based on this definition, there can be no doubt that Barrow is a prevailing party in this case in relation to Dr. Smith. She prevailed on her parental rights claim and obtained a judgment for compensatory and punitive damages.

Despite this, Dr. Smith may still be entitled to recover attorney's fees if he can show not only that Barrow failed on claims that were unrelated to her parental rights claim but that these unrelated

- 56 -

claims were frivolous.  *See Hensley v. Eckerhart*, 461 U.S. 434, 435 & n.10 (1983); *Uviedo v. Steves Sash & Door Co.*, 753 F.2d 369, 370-71 (5th Cir. 1985).  In *Uviedo* the Fifth Circuit explained that

> a plaintiff's claims which are unrelated to each other, though formally and properly joined in a single suit against a single defendant, are nevertheless to be considered for attorneys' fees purposes as if each were brought in a separate suit, so that a party's success or failure on one claim is not to be considered in determining that party's entitlement (or vulnerability) to attorneys' fees on an unrelated claim.

*Uviedo*, 753 F.2d at 370-71.  The court explicitly noted *Hensley*'s language that "[t]he congressional intent to limit [attorneys' fees] awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim," and that "[i]f the unsuccessful claim is frivolous, the defendant may recover attorney's fees incurred in responding to it[.]"  *Id.* at 371 (quoting *Hensley*, 461 U.S. at 435 & n.10) (alteration in original).  Although the Court in *Hensley* recognized "that there is no certain method of determining when claims are 'related' or 'unrelated,'" *Hensley*, 461 U.S. at 437 n.12, it did appear to suggest that those claims "based on different facts and legal theories" would be considered "unrelated," while those that "involve a common core of facts" or are "based on related legal theories" are "related," *id.* at 434-35.

The court concludes that all of Barrow's claims were sufficiently related to her parental rights claim as to prevent Dr. Smith from recovering attorney's fees under § 1988 as a prevailing party.  Each claim depended on the same set of factual circumstances: Dr. Smith's refusal to consider her for the position of Assistant Principal because she would not enroll her children in public school.  Because Barrow's claims were all sufficiently related, the court need not decide whether they were frivolous.

C

Dr. Smith also argues that he is entitled to attorney's fees because Barrow's parental rights claim became frivolous after she rejected his and GISD's offers of judgment. The court disagrees. Dr. Smith is not entitled to attorney's fees with respect to Barrow's parental rights claim because, as the court has explained, Barrow, not Dr. Smith, prevailed on this claim. *See Albright v. Good Shepherd Hosp.*, 901 F.2d 438, 440 (5th Cir. 1990) ("To obtain attorney's fees under [§ 1988], a litigant must be a 'prevailing party.'"). The court rejected this same argument in *Barrow III* in denying his motion for summary judgment. In doing so, the court noted that Dr. Smith had not "obtained dismissal of Barrow's lawsuit and [had] not demonstrated how her rejection of his settlement offers entitles him to 'prevailing party' status." *Barrow III*, 2005 WL 39086. at *9. Dr. Smith lost on Barrow's parental rights claim and has still not demonstrated why rejection of his settlement offers alone entitles him to "prevailing party" status.

For the foregoing reasons, the court concludes that Dr. Smith is not entitled to recover attorney's fees under § 1988, and it denies his motion.

VII

GISD also moves for an award of attorney's fees. It appears to contend that it is entitled to such fees under § 706(k) of Title VII and § 1988, asserting that the court has discretion under these authorities to grant attorney's fees to a prevailing defendant on a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in bad faith.

A

Among her arguments, Barrow asserts the same contentions as she did in relation to Dr. Smith's motion for attorney's fees: that she prevailed on her primary claim concerning her

constitutional right to exercise her choice of private religious education for her children, that all her claims were interrelated to her parental rights claim, and that only claims based on different facts and legal theories can be considered unrelated so as to allow a defendant to recover attorney's fees. The court disagrees.  Although Barrow prevailed against Dr. Smith with respect to her parental rights claim, she did not prevail against GISD on that claim.  Barrow has not cited any authority to suggest that her success against Dr. Smith can be imputed against GISD for purposes of determining whether GISD is entitled to attorney's fees under § 706(k) or § 1988.  The court concludes that she cannot.  Accordingly, Barrow's success against Dr. Smith does not prevent GISD from recovering attorney's fees.

B

GISD is only eligible for attorney's fees under § 706(k) or § 1988 if it can show that it was a prevailing party, *see Associated Builders*, 919 F.2d at 377; *Falcon v. General Telephone Co.*, 815 F.2d 317, 322 (5th Cir. 1987), and that Barrow's "action was frivolous, unreasonable, groundless, or made in bad faith,[21] or that [she] continued to litigate after it clearly became so[,]" *Trevino*, 811 F.2d at 906.  In determining whether the latter showing has been made, the court focuses on whether a claim "was void of arguable legal merit or factual support" instead of "whether the claim was ultimately successful." *Jones v. Tex. Tech Univ.*, 656 F.2d 1137, 1145-46 (5th Cir. Unit A Sept. 1981).  The court "should look to factors such as whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial." *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2000) (citing *United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991)).  GISD argues that Barrow's claims under § 1983, Title VII, § 110, and Article I,

---

[21]GISD does not appear to rely on allegations that Barrow made her claims in bad faith.

- 59 -

§ 6 were unreasonable, without foundation, or frivolous. The court will address each claim in turn.

1

There is no question that GISD is a prevailing party on Barrow's § 1983 claim. The court granted summary judgment in part as to this claim and the jury decided in GISD's favor as to the balance of the claim at trial. GISD is not entitled to attorney's fees, however, because the court is unable to conclude that the claim was unreasonable, groundless, or frivolous.

In deciding GISD's motion for summary judgment, the court held, in pertinent part, that she had "produced evidence that is sufficient to raise a genuine issue of material fact concerning whether the alleged constitutional violations occurred pursuant to a custom or practice of GISD." *Barrow II*, 2002 WL 628665, at *6. Because she in part met her burden at the summary judgment stage, Barrow was entitled to, and received, a trial on the issue. Additionally, the court declined to grant judgment as a matter of law dismissing her § 1983 cause of action after she rested her case-in-chief. Under these circumstances, the court concludes that her claim was not groundless, unreasonable, or frivolous and that GISD is not entitled to recover attorney's fees incurred in defending Barrow's § 1983 claim.

2

GISD is also a prevailing party on Barrow's Title VII claim. The court granted summary judgment with respect to Barrow's disparate treatment and impact claims on GISD's motion, and the jury ruled in its favor on Barrow's religious accommodation claim. Although Barrow ultimately lost on her Title VII claim, she survived a motion for judgment as a matter of law at trial, and her Title VII claim was submitted to the jury for determination. Accordingly, the court cannot say that it was groundless, unreasonable, or frivolous. GISD is therefore not entitled to attorney's fees on

this claim.

3

GISD is also not entitled to attorney's fees for defending against Barrow's state statutory and constitutional claims. In its motion, GISD does not appear to move for attorney's fees pursuant to Texas law, and §§ 1988 and 706(k) do not explicitly provide for the recovery of attorney's fees incurred in the defense of pendent state-law claims. Although the Fifth Circuit has at least once upheld the award of attorney's fees under § 1988 to a defendant on a federal civil rights claim and a state-law claim, it did so where the defendant was entitled to attorney's fees on the civil rights claim because it was "frivolous, unreasonable, and groundless." *See Church of Scientology v. Cazares*, 638 F.2d 1272, 1290 (5th Cir. Mar. 1981). In this case, GISD is not entitled to attorney's fees on Barrow's federal claims. GISD has not cited the court to any authority in this circuit, and the court has found none on its own, that supports a recovery of attorney's fees by a defendant under either § 1988 or § 706(k) for defending against state-law claims where the defendant was not otherwise entitled to recover fees under these statutes for federal-law claims. Accordingly, the court declines to award attorney's fees to GISD for defending against Barrow's § 110 and Texas constitutional claims.

VIII

The court turns finally to Barrow's request that the court schedule a *Dondi*[22] conference with her counsel and Dr. Smith's counsel. She argues that Dr. Smith's counsel made numerous personal attacks against her and her attorneys in Dr. Smith's motion for attorney's fees and brief that are

---

[22]*Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) (per curiam).

- 61 -

false, slanderous, and unprofessional.  The court concludes that a *Dondi* conference is not warranted.

Having reviewed the pages in Dr. Smith's brief on which Barrow relies, the court does not agree that

they contain personal attacks.  Rather, on these pages Dr. Smith appears to make a proffer of

evidence that he intends to present on the issue of who should be charged his attorney's fees, if the

court decides to award them.  Accordingly, a *Dondi* conference is unnecessary, and Barrow's request

is denied.

*   *   *

In sum, GISD's April 6, 2005 motion for attorney's fees is denied.  Dr. Smith's April 8, 2005

motions for new trial, for judgment as a matter of law, to alter or amend judgment, and for attorney's

fees are denied.  Barrow's May 5, 2005 request for *Dondi* conference is denied.  Barrow's April 11,

2005 post-trial motion to alter or amend judgment and motion for judgment as a matter of law are

denied except to the extent the court has deferred ruling on them due to the outstanding issue of

Barrow's recovery of attorney's fees and costs.  The court also defers a decision on Barrow's April

11, 2005 preliminary motion for attorney's fees and defers deciding her April 13, 2005 objections

to GISD's bill of costs.

The additional submissions required by this memorandum opinion and order are set out

*supra* at § V(C)(2).

**SO ORDERED**.

August 5, 2005.


SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE